IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANCH BANKING & TRUST COMPANY,<br>   *Plaintiff,*<br><br>         v.<br><br>FISHING VESSEL TOPLESSS, her engines, tackle, appurtenances, etc., Official No. 1083070,<br>   *Defendant.* | Civil Action No. ELH-12-2364 |

**MEMORANDUM OPINION**

This case concerns the fate of the Fishing Vessel TOPLESSS, Official No. 1083070 (the "Vessel"), which is the object of a foreclosure proceeding initiated by Branch Banking & Trust Company ("BB&T") under a preferred ship's mortgage (the "Mortgage") issued in its favor by the owner of the Vessel, Steele Sportfishing Service Corporation ("Sportfishing"). *See* 46 U.S.C. § 31325(a), (b). BB&T presently seeks an interlocutory sale of the Vessel; Sportfishing seeks a stay of the proceedings, pending further review in a Maryland state court of a related default judgment proceeding.

Suit was instituted on August 9, 2012, when BB&T filed a Verified Complaint *In Rem* (the "Complaint") alleging that Sportfishing had defaulted on its obligations under the Mortgage and seeking to foreclose on the Vessel (ECF 1). In the Complaint, BB&T requested a Warrant for Arrest of the Vessel, which this Court granted (ECF 7). The U.S. Marshal subsequently arrested the Vessel and relinquished custody to a substitute custodian (ECF 8). On August 31, 2008, a Notice of Arrest and Seizure was published in *The Sun*, pursuant to Local Admiralty Rule (c)(2) (ECF 13). That same day, Sportfishing filed a Verified Statement of Interest, accompanied by a Motion to Stay Further Action, pending resolution in the Circuit Court for

Baltimore County of its motion for review in banc of a default judgment proceeding involving these same parties (ECF 12).

Thereafter, on September 20, 2012, Sportfishing filed an Answer to the Complaint denying the allegations (ECF 17). On October 1, 2012, BB&T filed a Motion for Interlocutory Sale, pursuant to Rule E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule E") (ECF 21), along with Memorandum in support of its motion and in opposition to Sportfishing's Motion to Stay ("Memo," ECF 21-1). Sportfishing filed an Opposition to the Motion for Interlocutory Sale and Reply in Support of its Motion to Stay ("Opposition" or "Opp.," ECF 27), to which BB&T replied (ECF 29). Both motions are ripe for decision, and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I will deny the Motion to Stay and grant the Motion for Interlocutory Sale.

**Factual Background**

On May 12, 2008, Steelesoft, Inc. obtained from BB&T a "Commercial Promissory Line of Credit Note" (the "Note") in the amount of $5,875,000, with payments to be due on the 12th of every month thereafter. Compl. ¶ 7; *see* Note, Compl. Exh. A (ECF 1-1). In exchange, Sportfishing[1] executed in favor of BB&T a "Guaranty Agreement (the 'Guaranty') guaranteeing the obligations of [Steelesoft] under the Note," Compl. ¶ 8. As security for "the obligations of Steelsoft under the Note and Sportfishing under the Guaranty, on or about May 12, 2008, Sportfishing executed and delivered in favor of BB&T a $6,375,000 First Preferred Ship's Fleet Mortgage (the 'Mortgage') covering two vessels," the Vessel and a second fishing vessel,

---

[1] Steelesoft and Sportfishing are two of several business entities allegedly owned or controlled by Scott R. Steele.

TOPLESSS II (the "Second Vessel").[2]  *Id.* ¶ 9.  BB&T alleges that Sportfishing has failed to make any payments on the Note since March of 2011, and that Sportfishing failed to respond to BB&T's letter of April 26, 2011, or its subsequent demands, in which BB&T notified Sportfishing that it was in default, and that all outstanding amounts under the Note were immediately due.  *Id.* ¶¶ 14-15.

On January 4, 2012, prior to initiating the instant proceeding, BB&T filed a Complaint and Confession of Judgment against Steelesoft and Sportfishing (the "Steele Defendants"), in the Circuit Court for Baltimore County (the "Circuit Court"), seeking to recover $4,461,928.67 with regard to the Steele Defendants' default on their obligations under the Note and the Guaranty.  *Id.* ¶ 16.  On January 6, 2012, the Circuit Court entered judgment by confession in favor of BB&T in the claimed amount, plus prejudgment interest.  *Id.* ¶ 17; *see* Entry of Judgment, Compl. Exh. F (ECF 1-6).  On April 25, 2012, the Circuit Court denied the Steele Defendants' motion to vacate.  Compl. ¶ 18; *see* Order, Compl. Exh. G (ECF 1-7).

BB&T subsequently initiated this proceeding[3] in federal court, alleging that Steelesoft defaulted under the Note, and thereby breached the terms of the Mortgage.  *Id.* ¶¶ 12-14.  As noted, this Court issued a Warrant for Arrest of the Vessel on August 9, 2012.  That same day, the U.S. Marshal executed the warrant and delivered the Vessel into the custody of LAB Marine, Inc., as substitute custodian of the Vessel, pending final judgment in this case.  *See* Executed Warrant (ECF 8).  To date, the Vessel remains under arrest.  Sportfishing has not posted security

---

[2] Sportfishing does not dispute the existence or terms of the agreements entered into with BB&T.  Although Sportfishing "denied" the allegations pertaining to payments made or not made since March of 2011, *see* Answer at ¶¶ 14-15, it has not affirmatively disputed those allegations in any of its subsequent motions.

[3] BB&T has also allegedly initiated foreclosure proceedings against properties in Ocean City, Maryland and Palm Beach County, Florida, owned by Scott R. Steele or one of his businesses.  *See* Affidavit of Scott R. Steele ("Steele Aff.") ¶ 5 (ECF 28).

to effectuate release of the Vessel, as permitted under Rule E(5), nor has it offered any indication that it intends to do so.

After the Vessel's arrest, BB&T conducted an appraisal of the Vessel (the "Appraisal"), which valued it at $1.1 million. *See* Appraisal at 27 (ECF 21-3). The Appraisal also revealed the existence of problems with the Vessel from "neglect to maintence," and recommended that several "essential" repairs be undertaken before further use. *See id.* at 26, 28-29. BB&T expects to incur approximately $4,000 per month to maintain the Vessel. *See* Declaration of Lawrence Shields, Vice President of BB&T ("Shields Decl.") ¶ 13 (ECF 21-2). The Second Vessel was allegedly abandoned in Puerto Rico, where it remains, and a survey by BB&T revealed that engines, machinery and electrical systems would require "complete removal and replacement" before it can be used again. *See id.* ¶ 10.

On September 28, 2012, following the initiation of the instant proceedings, the Circuit Court granted the Steele Defendants' Motion for In Banc Review of the denial of their motion to vacate. *See* ECF 27-1, 27-2. However, to my knowledge, no hearing date has been set.

**Discussion**

In its Motion to Stay, Sportfishing argues that this Court should use its equitable powers to stay the foreclosure proceeding in federal court, pending resolution of the state court's review in banc of the adverse decision in the default judgment proceeding. According to Sportfishing, the instant proceeding is contingent upon the viability of the default judgment issued in state court, and that default judgment is subject to impending judicial review. BB&T responds that a federal action to foreclose on a preferred ship mortgage under 46 U.S.C. § 31322, *et seq.*, is not contingent on the state court default judgment proceeding and involves distinct issues. Therefore, it maintains that the Court should not impose a stay.

In addition, BB&T argues that it is entitled to an interlocutory sale of the Vessel under Rule E(9), because Sportfishing has failed to post a bond and secure release of the Vessel; the Vessel is subject to deterioration; and maintenance costs for the Vessel are disproportionate to its value. Sportfishing responds that the Vessel does not show signs of substantial deterioration, and that maintenance costs are not disproportionate to the value of the Vessel.

*1. BB&T's Motion for Interlocutory Sale*

Rule E provides that the interlocutory sale of an arrested vessel is appropriate if: "(1) The attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (2) the expense of keeping the property is excessive or disproportionate; or (3) there is an unreasonable delay in securing release of the property." Because the rule is phrased in the disjunctive, a party moving for interlocutory sale need only establish one of these three factors. *See, e.g.*, *Silver Star Enters. Inc. v. M/V SARAMACCA*, 19 F.3d 1008, 1014 (5th Cir. 1994) (interlocutory sale appropriate based on excessive maintenance costs and unreasonable delay, but not finding vessel subject to deterioration). In my view, BB&T has established that the vessel is subject to deterioration and that there has been an unreasonable delay in securing release of the property, and consequently, that an interlocutory sale is appropriate.

Rule E(9) directs that a vessel liable to deterioration may be subject to interlocutory sale. *See, e.g.*, *Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1342 (5th Cir. 1981) (finding interlocutory sale appropriate where "hulls of all vessels and most of the superstructures were subject to rusting and had not been properly painted"). Notably, "the interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale," *Pee Dee State Bank v. F/V Wild Turkey*, Civ. No. 2:91-809-18,

1991 WL 355221, at *5 (D. S.C. Oct. 9, 1991), undertaken, in part, to "avoid[] the recognized complications associated with maintaining a vessel under arrest." *Freret Marine Supply v. M/V Enchanted Capri*, No. 00-3805, 2001 WL 649764, at *1 (E.D. La. June 11, 2001). Accordingly, the property need only be "*liable to* deterioration" for an interlocutory sale to be ordered. *See* Rule E(9).

I am wary of leaving the Vessel dormant pending resolution of the state court default judgment proceeding, particularly with winter weather approaching. Significantly, the appraisal conducted by BB&T revealed multiple problems with the Vessel resulting from negligence in maintenance and lack of use. Moreover, the value of the Vessel—$1.1 million—is far less than the sum of approximately $4.5 million required to satisfy Sportfishing's outstanding obligations under the Mortgage. Thus, without any showing that, if plaintiff were to prevail, BB&T would have recourse against other assets of defendant, any diminution in value in the Vessel would increase plaintiff's loss.[4] Further, in light of the abandonment and deterioration in value of the Second Vessel, conversion of the vessel to cash is appropriate to secure recovery of the Vessel's present value. And, if defendant ultimately were to prevail, BB&T could be required to remit the proceeds of sale to defendant.

Moreover, Sportfishing has made no attempt to post a bond and secure the release of the Vessel, nor has it indicated any intent to do so in the near future. Rule E(5) permits an interested party to post a bond to secure the release of the seized vessel, and failure to post such a bond for an unreasonable period of time, while the value of the vessel deteriorates or the mortgagor incurs other substantial costs, justifies an interlocutory sale. *See Silver Star*, 19 F.3d at 1014

---

[4] Based on the Steele Affidavit, Sportfishing states that foreclosure by BB&T on other properties in Ocean City, Maryland and Palm Beach County, Florida, would be adequate to satisfy an adverse judgment. But, no specific property values were offered, leaving the Court without any basis to reach that conclusion. *See* Steele Aff. at ¶ 5.

(finding interlocutory sale appropriate after 7-month delay in securing release of vessel after arrest and excessive maintenance costs); *Ferrous Fin. Serv. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983) (finding unreasonable a failure to secure release of vessel during four months after arrest, and in light of excessive maintenance costs); *see also John W. Stone Oil Distrib., L.L.C. v. M/V Lucy*, No. 09-4440, 2009 WL 4166605, at *1 (E.D. La. Nov. 20, 2009) (finding four months' delay unreasonable and collecting cases).

In view of Sportfishing's failure to obtain a bond to secure release of the Vessel for almost four months since the date of arrest, and because the Vessel is liable to deteriorioration, an interlocutory sale is appropriate.[5]  For the same reasons, I am not persuaded that I should construct an alternative arrangement, such as shifting the burden of paying maintenance costs, as suggested by Sportfishing.

  2.  *Sportfishing's Motion to Stay*

Notwithstanding the Circuit Court's impending in banc review of the default judgment issued in state court, this is not a basis to stay the proceedings in federal court.

Generally, a party requesting a stay in federal proceedings pending resolution of a state court proceeding invokes the doctrine of *Colorado River* abstention.  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("When a district court decides to dismiss

---

[5] I am not convinced that $4,000 per month in maintenance costs is dispororitionate for a vessel with a fair market value of $1.1 million.  Although I am sensitive to the fact that the maintenance costs will be paid out from any sale of the vessel before BB&T can recover, this cost/value ratio is far smaller than other instances in which costs were disproportionate.  For example, in *Ferrous Financial*, the annual cost of keeping the vessel reached $166,000 per year, and after a four-month delay, those expenses amounted to $48,000. 567 F. Supp. 400, 401 (D. Wash. 1983).  Here, the annual rate would be less than $50,000 per year, a significant difference, and, at that rate, only $16,000 would have been expended for the approximately four months that have passed since the Vessel was arrested in early August.  Although a long period of arrest could lead to substantial maintenance costs, a *disproportionate* ratio based on a regular maintenance amount is not evident.  Nonetheless, having found the two other prongs of Rule E(9) satisfied, I am not dissuaded from granting the interlocutory sale as a result.

or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."); *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073-74 (4th Cir. 1991) (applying *Colorado River* abstention doctrine). Indeed, some courts have granted stays in a foreclosure proceeding involving a preferred ship mortgage during parallel state court proceedings under the *Colorado River* doctrine of absention. *See Sea Prestigio, LLC v. M/Y Triton*, 787 F. Supp. 2d 1116, 1118-21 (S.D. Ca. 2011) (abstaining from exercising jurisdiction over federal foreclosure action on preferred ship's mortgage under *Colorado River* doctrine pending resolution of related state court proceeding, where foreclosure right was derivative of state court finding of default). But, Sportfishing vehemently disclaims any reliance on *Colorado River* abstention. *See* Opp. at 5. And, in any event, Sportfishing's concession that the proceedings are not, in fact, "parallel" for purposes of the *Colorado River* doctrine, *see* Opp. at 5, would effectively preclude this argument.

Instead, Sportfishing argues that a stay should be entered pursuant to a district court's inherent power to control its docket. *See* Opp. at 3 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Further, it contends that such power should be exercised when there is a similar action pending in state court. *See Popoola v. MD-Individual Practice Ass'n, Inc.*, Civ. No. DKC 2000-2946, 2001 WL 579774, at *2 (D. Md. May 23, 2001). "The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Georgia Pac. Corp.*, 562 F.2d 294, 296

(4th Cir. 1977) (citing *Landis*, 299 U.S. at 254).  I am persuaded that a stay is not appropriate in this instance, because it would not lead to a comprehensive or expedient disposition of the case.

To be sure, there are some overlapping facts in the two cases, insofar as both concern lending relationships between BB&T and Steele or his companies, and BB&T is the plaintiff in each.  But, as BB&T observes, foreclosure on a preferred ship mortgage arises under federal law, *see* 46 U.S.C. § 31325(c)(granting district courts original jurisdiction over actions brought under § 31325(b)) and presents a distinct issue—whether Sportfishing has "default[ed] on *any* term of the preferred mortgage," 46 U.S.C. § 31325(b) (emphasis added)—which does not rest on the merits of the default judgment proceeding in state court.  In other words, the default judgment in state court is not, as Sportfishing assumes, "the condition precedent for the instant matter."  Opp. at 5.  Indeed, BB&T could have initiated foreclosure proceeding on the Mortgage without a default judgment from state court.  *See* 46 U.S.C. § 31325(b) (allowing foreclosure as remedy for "default of *any term* of the preferred mortgage") (emphasis added).

Furthermore, I am satisfied that Sportfishing's interest in the state court proceeding would not be prejudiced by an interlocutory sale of the vessel.  As indicated, "the interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale," *Pee Dee*, 1991 WL 355221, at *5.  And, Sportfishing has not articulated any reason to suggest that a resolution in its favor is imminent, or even likely, in the state court proceeding.  Nor has Sportfishing affirmatively disputed that it failed to make payments due on the Note since March of 2011, a fact that appears to be the foundation of this foreclosure proceeding.  Moreoever, based on my review of the order denying the motion to vacate, reversal of the default judgment is not the obvious result.  In the Circuit Court Order, Compl. Exh. G (ECF 1-8), Judge John Fader II said: "What has been stated . . . is what case law refers to as bald allegations and

conclusory statements devoid of facts upon which the motion could be successful. . . . There is nothing specific and/or oriented correctly in anything produced that would allow the court to see a dispute of fact concerning a calculation of the money claimed by the Plaintiff to be due and owing." Conversely, entering a stay pending the Circuit Court's decision would postpone these proceedings indefinitely, thereby prejudicing BB&T by precluding any further relief it might seek in the interim, including that of the present Motion for Interlocutory Sale. Because entering a stay would prejudice BB&T without yielding any obvious benefits for the resolution of this case, I decline Sportfishing's invitation to do so.

## Conclusion

For the foregoing reasons, BB&T's Motion for Interlocutory Sale will be granted, and Sportfishing's Motion to Stay will be denied. An Order consistent with this Memorandum Opinion follows.

Date: November 29, 2012                                    /s/

                                                      Ellen L. Hollander
                                                    United States District Judge